**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Michael Foley,<br><br>    Plaintiff<br><br>v.<br><br>Kenneth Graham, et al.,<br><br>    Defendants | Case No.: 2:16-cv-01871-JAD-VCF<br><br>**Order Granting Defendants'<br>Motion to Dismiss Individual-<br>Capacity Claims against Defendants<br>Graham and Bourne**<br><br>[ECF No. 47] |

Only two defendants remain in this civil-rights lawsuit that seeks to redress plaintiff Michael Foley's arrest for contempt for unpaid child support—Clark County District Attorney's Office (CCDAO) Investigators Kurt Graham and Kenneth Bourne.[1]  Graham and Bourne move to dismiss the claims that Foley asserts against them in their individual capacities, arguing that they are entitled to both qualified and absolute quasi-judicial immunity because they were executing a child-support contempt order during the arrest.[2]  They also argue that their motion should be treated—and granted—as unopposed because plaintiff Michael Foley's response was filed after the already-extended deadline and he was expressly warned that the motion would be granted if not timely opposed.  Because Foley failed to timely file his response after I gave him the extension, I grant Graham and Bourne's motion to dismiss the individual-capacity claims against them as unopposed.[3]

---

[1] ECF No. 45 (order).

[2] ECF No. 47 at 6–13 (motion to dismiss).

[3] ECF No. 53 (order granting extension).

**Background**

Foley alleges that on August 6, 2014, CCDAO Investigators Graham and Bourne wrongfully arrested him and, in doing so, Graham used excessive force by placing handcuffs "excessively tight" on his wrist.[4] He also claims that Graham and Bourne conspired in the operation of a debtor's prison by using an invalid warrant to arrest him for his child-support debt.[5] He sues them in their official and individual capacities under 42 U.S.C. § 1983 for unlawful arrest (Graham and Bourne) and excessive force (Graham only).

On February 19, 2020, Graham and Bourne filed this motion to dismiss the individual-capacity claims against them.[6] Foley failed to respond to that motion by the given deadline,[7] so Graham and Bourne requested that I grant their motion as unopposed.[8] Foley then filed an extension request, which I granted with the explicit instruction that he had to file his response by

---

[4] ECF No. 18 at 5 (second amended complaint).

[5] *Id*. I take judicial notice of the booking record for Foley's arrest that shows that he was arrested for contempt of court by the District Attorney's Office of Family Support. ECF No. 29 at 14; *see Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment.") (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).

[6] ECF No. 47. Though they don't make it explicit that they are not seeking to dismiss the official-capacity claims, the immunity arguments on which Graham and Bourne's motion is based apply only to individual-capacity claims. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (noting that personal immunity defenses are unavailable "[i]n an official-capacity action").

[7] *See* ECF No. 50 (notice of non-opposition).

[8] *Id*.

April 3, 2020, or the motion to dismiss would be granted as unopposed.[9]  Foley missed that extended deadline by one day,[10] and he filed an errata to that response two days later.[11]

## Discussion

### I. Because Foley failed to file a timely opposition, I grant the defendants' motion to dismiss as unopposed.

Local Rule 7-2(d) provides that "[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion."[12] The Ninth Circuit has laid out a five-factor test for evaluating when dismissal for a procedural failure is appropriate.  A court must weigh: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases of their merits; and (5) the availability of less drastic sanctions."[13]  These factors weigh in favor of deeming the defendants' motion to dismiss unopposed and granting it on that basis.

The first two factors, the public's interest in expeditiously resolving this litigation and the court's interest in managing its docket, weigh in favor of dismissal here, as they do in most cases.  The third factor—risk of prejudice to defendants—weighs in favor of dismissal because a presumption of injury arises from unreasonable delay in complying with a court order or

---

[9] ECF No. 53 at 2.

[10] *See* ECF No. 53 (instructing Foley to file his response by April 3, 2020); *see also* ECF No. 54.

[11] ECF No. 55.

[12] *See United States v. Warren*, 601 F.2d 471, 474 (9th Cir. 1979) (recognizing that courts may adopt consent rules like this one).

[13] *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986).  *See, e.g.*, *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992), *as amended* (May 22, 1992); *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002).

prosecuting an action.[14]  The record of Foley's unreasonable delay is clear.  Foley was well aware of the motion to dismiss before the time to respond arrived,[15] and he had a thin excuse for ignoring the original response deadline.[16]  Nevertheless, in the interests of resolving this case on its merits, I granted his belated request for an extension, explicitly warning in bold, "**Foley must file his response to that motion [ECF No. 47] by April 3, 2020, or the motion will be granted as unopposed.**"[17]  Foley missed that deadline by a day[18] and then filed an errata two days later.[19]  So his ultimate response was not lodged until three days after the court's already-extended deadline.

A court's warning to a party that its failure to obey the court's order will result in dismissal satisfies the fifth factor's "consideration of alternatives" requirement,[20] and that warning was given here.[21]  The fourth factor—the public policy favoring disposition of cases on their merits—is greatly outweighed by the factors favoring dismissal.  So, I apply Local Rule 7-2(d), deem Graham and Bourne's motion to dismiss as unopposed, and I grant it on that basis.[22]

---

[14] *See Anderson v. Air West*, 542 F.2d 522, 524 (9th Cir. 1976).

[15] *See* ECF No. 52 at 8.

[16] *See* ECF No. 51.

[17] ECF No. 53.

[18] *See* ECF No. 54.  The response is dated—and was filed on—April 4th.

[19] ECF No. 55.

[20] *Ferdik*, 963 F.2d at 1262; *Malone v. U.S. Postal Service*, 833 F.2d 128, 132–33 (9th Cir. 1987); *Henderson*, 779 F.2d at 1424.

[21] ECF No. 53.

[22] *See Helman v. Nationwide Life Insurance Co.*, 189 Fed. Appx. 593, 594 (9th Cir. 2006) (citing *Delange v. Dutra Construction Co.*, 183 F.3d 916, 919 n. 2 (9th Cir. 1999) ("District courts have broad discretion in interpreting and applying their local rules.")).

## II. Even if I considered Foley's late-filed opposition, dismissal is warranted on immunity grounds.

Even if I excused Foley's delay and considered the motion and Foley's response on their merits, I would still dismiss Foley's individual-capacity claims against Graham and Bourne under Federal Rule of Civil Procedure 12(b)(6).[23] When, as here, defendants assert immunity in a motion to dismiss under Rule 12(b)(6), dismissal is appropriate if the court can "determine, based on the complaint itself," that immunity applies.[24]

### A. Graham enjoys qualified immunity from Foley's excessive-force claim.

Foley alleges that Graham violated his Fourth Amendment rights by placing handcuffs "excessively tight" on his right wrist with "deliberate indifference, to cause him to suffer pain and injury."[25] Graham argues that he is entitled to qualified immunity from that claim.[26] "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action […] assessed in light of the legal rules that were clearly established at the time it was taken."[27] "For a right to be clearly established," the case law must have been so concretely developed before the alleged violation that it was "obvious to all reasonable government actors[] in the defendant's place[] that [his] conduct violate[d] federal law."[28]

---

[23] Because public policy favors disposition of cases on their merits, I discuss why I would also dismiss Foley's motion on the merits. *See Pagtalunan*, 291 F.3d at 643.

[24] *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)).

[25] ECF No. 18 at 5.

[26] ECF No. 47 at 11–13.

[27] *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (internal citations omitted).

[28] *McGuigan v. County of San Bernardino*, 698 F. App'x. 919, 920 (9th Cir. 2017) (citations and alterations omitted).

5

Graham is entitled to qualified immunity from this excessive-force claim because it was not clearly established that his conduct violated the law. While the Ninth Circuit has recognized that an officer's use of tight handcuffs on an arrestee can constitute excessive force, those cases involved allegations that the officer was informed of the pain but ignored it, or that the defendant had visible injuries or requested medical treatment.[29] Foley's allegations fall far short of that mark as he does not allege that Graham ignored any complaints of pain, that the "excessively tight" handcuffs caused visible injuries, or that he sought medical treatment.[30] Instead, he offers only the legal conclusions that "Graham placed the handcuffs excessively tight on [his] right wrist . . . with deliberate indifference, to cause him to suffer pain and injury to his wrist" and that he "suffered pain injury due to . . . [Graham's] malfeasance and recklessness."[31] Foley even appears to concede that he didn't inform Graham of any pain or injury from the handcuffs. He argues in his belated opposition that he was "NOT obligated to tell the violator every last detail as to *how* his rights are being violated *while* they are being violated" and that his alleged injury could have been avoided if Graham had "just *listened* to [him] and *obeyed the law, and uncuffed*

---

[29] *See, e.g.*, *LaLonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000); *cf. McGuigan*, 698 F. App'x. at 920 ("[W]e cannot conclude that it was obvious to all reasonable officers . . . that it was excessive force to restrain McGuigan against a wall and refuse to loosen his handcuffs, though McGuigan did not complain of pain."); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989).

[30] *See* ECF No. 18 at 5; *see also* ECF No. 55 at 4.

[31] ECF No. 18 at 5. *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("'bare assertions . . . amounting to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to dismiss, are not entitled to an assumption of truth.") (alterations omitted); *see also Sharp v. County of Orange*, 871 F.3d 901, 916 (9th Cir. 2017) (holding that officer was entitled to qualified immunity because, even though the plaintiff alleged that the handcuffs were tight enough to break his skin, he did not offer "anything other than general legal propositions[,] which cannot clearly establish that [the arresting officer's] particular conduct was unlawful").

6

*him and released him immediately*[.]"[32]  These facts simply do not state a constitutional deprivation.[33]  And because Foley only alleges that he was subjectively experiencing pain, offering no facts to suggest that Graham knew or should have so known, I cannot conclude that a reasonable officer in Graham's position would have understood that the handcuffs were so tight that their placement violated Foley's constitutional rights.  Graham would therefore be entitled to qualified immunity from Foley's excessive-force claim.

### B. Graham and Bourne enjoy absolute immunity from Foley's unlawful-arrest claim because they were performing a quasi-judicial function.

Foley contends that his arrest was unlawful because the warrant was signed by Hearing Master Merle Lok, who is not a judge, was not authorized to issue a warrant, and therefore lacked jurisdiction to do so.[34]  He adds that the officers are not immune from this suit because they acted on this invalid warrant and that quasi-judicial immunity for prosecutorial work doesn't apply in civil matters.[35]  The officers respond that immunity applies even if the warrant was not signed by a judge because: (1) executing a warrant is not a violation of an established right; (2) the officers reasonably understood the warrant to be valid, which provided their probable cause for arresting Foley; and (3) the officer's quasi-judicial immunity extends to an array of civil matters, including the enforcement of a child support order.[36]

---

[32] ECF No. 55 at 4 (emphasis in the original).

[33] *See Sharp*, 871 F.3d at 916 (providing that "claims for false arrest and excessive force are analytically distinct" and explaining that a lack of probable cause to make an arrest does not establish an excessive-force claim).

[34] ECF No. 55 at 2–3; ECF No. 18 at 6.

[35] ECF No. 55 at 4–5.

[36] ECF No. 56 at 9–10, 13–14.  The defendants also ask me to convert their dismissal motion to one for summary judgment, attaching numerous exhibits, but I decline to do so because I resolve the motion on issues of law and need not step outside the pleadings to do so.

1    The fact that a judge didn't sign the warrant did not make it invalid.  Nevada law supplies
2 hearing masters with great latitude in child-dependency proceedings.  Hearing masters may,
3 among other things, issue child-support orders; require parents to comply with them; "[e]nforce
4 orders by civil or criminal contempt, or both"; "[i]ssue a bench warrant" for a parent who fails to
5 appear at hearings; "and enter the bench warrant in any local and state computer system for
6 criminal warrants."[37]  Each of these actions qualifies as a "recommendation" that is "[s]ubject to
7 approval by the district court,"[38] but NRS § 425.3844(3)(a) provides that the recommendation is
8 automatically "deemed approved by the district court" if the party doesn't object within ten days.
9 And once it is approved, "the recommendation has the force, effect and attributes of an order or
10 decree of the district court, including, but not limited to . . . contempt of court proceedings."[39]
11 Accordingly, Hearing Master Lok had the authority to recommend a contempt order and bench
12 warrant in this case, and because Foley doesn't allege that he objected to the recommendation
13 within ten days (if at all), it was deemed approved and had the effect of a district court order.  So
14 Foley's theory that the warrant was legally invalid because it was issued by a hearing master and
15 not a judge fails as a matter of law.

16     Foley's additional argument that the officers aren't immune from this suit because they
17 acted on an invalid warrant fails because Foley hasn't shown that the officers acted beyond the
18 scope of their quasi-judicial function.  The Ninth Circuit has recognized that the execution of
19 court orders is an integral quasi-judicial function that deserves the protection of absolute

---

[37] Nev. Rev. Stat. §425.382(2).

[38] *Id*.

[39] Nev. Rev. Stat. § 425.3844(9).

immunity.[40]  Quasi-judicial "[i]mmunity flows from the nature of the function performed, not the identity of the actor who performed it."[41]  An officer will therefore be cloaked in quasi-judicial immunity so long as he is carrying out the explicit orders of the court.[42]  Conduct that deviates from that function—such as an investigation or petition for a warrant—will instead be subject to a qualified immunity analysis.[43]

Foley alleges only that Graham and Bourne "used said documents to trick [him]" into an arrest and to present him to the Clark County Detention Center as a prisoner.[44]  He limits the officers' participation in the operation of the alleged debtor's prison to the execution of the warrant, so absolute immunity, rather than qualified immunity, applies.  Because Graham and Bourne arrested Foley based on the contempt order for his failure to pay child support, both officers would be entitled to absolute immunity from Foley's unlawful-arrest claim.[45]

---

[40] *See Coverdell v. Department of Social and Health Services*, 834 F.2d 758, 764–65 (9th Cir. 1987) (internal citation omitted).

[41] *Patterson v. Van Arsdel*, 883 F.3d 826, 830 (9th Cir. 2018) (citation omitted).

[42] *Brooks v. Clark County*, 828 F.3d 910, 919 n.6 (9th Cir. 2016) (citing *Coverdell*, 834 F.2d at 764) (noting that the Ninth Circuit "previously suggested that absolute immunity does protect those 'who faithfully execute valid court orders'" but no more); *see, e.g.*, *Tanner v. Heise*, 879 F.2d 572, 581 (9th Cir. 1989) ("[The plaintiff] is therefore unable to state a claim for relief against [the arresting officers], based on their actions taken pursuant to that valid warrant.").

[43] *See Van Arsdel*, 883 F.3d at 831 (citing *Swift v. California*, 384 F.3d 1184, 1193 (9th Cir. 2004) (applying a qualified-immunity analysis to a parole officer's investigation of parole violations and recommendations for revocation); *Malley v. Briggs*, 475 U.S. 335, 335–36 (1986) ("Nor is there any tradition of absolute immunity for a police officer requesting a warrant . . . . In the case of an officer applying for a warrant, the judicial process will on the whole benefit from a rule of qualified rather than absolute immunity.").

[44] ECF No. 18 at 7.

[45] Because I would dismiss based on absolute immunity, I do not reach the parties' qualified-immunity arguments on this claim.

**Conclusion**

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **[ECF No. 47]** is **GRANTED** as unopposed based on plaintiff's failure to file a timely response, and the plaintiff's individual-capacity claims against Bourne and Graham are dismissed on immunity grounds. This case proceeds against Bourne and Graham only on Foley's claims against them in their official capacities, which are effectively claims against their offices and not against them personally.[46]

DATED August 14, 2020

_____
United States District Judge Jennifer A. Dorsey

---

[46] *See* ECF No. 18 (alleging claims against Bourne and Graham in their official and individual capacities); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").